IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLIE EAKLE,                          :
                                        :
            Petitioner                  :
                                        :    CIVIL NO. 4:07-CV-1031
                                        :
      v.                                :    Hon. John E. Jones III
                                        :
                                        :
WARDEN, *et al.*,                       :
                                        :
            Respondents                 :

## MEMORANDUM

March 18, 2011

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Petitioner Charlie Eakle ("Petitioner" or "Eakle"), an inmate presently confined at the Graterford State Correctional Institution ("SCI Graterford") in Graterford, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2254. He challenges his 1998 conviction in the Court of Common Pleas of Lackawanna County following his entry of a guilty plea. For the reasons set forth herein, the Petition will be denied.

# I. PROCEDURAL BACKGROUND

## A. Eakle's Arrest For Serial Molestation and His Competency Evaluation

This case arises out of a decade-long course of serial sexual abuse of a minor child by Eakle. In the summer of 1997, local police investigated allegations that Eakle had been sexually abusing his own step-child over an extended period of time. In the course of this investigation, police executed a search warrant at Eakle's home and interviewed Eakle, who made a series of guarded admissions to the authorities, apologizing for his mistreatment of this child (*see* Doc. 17-6, pp. 24-26, 57.) Police also consensually recorded a conversation with Eakle in which he made admissions regarding this offense. (*Id.*, p. 58.)

Based upon this information, Eakle was arrested and taken into custody. Upon his arrest, Attorney David Cherundolo was appointed to represent Eakle. Because Attorney Cherundolo harbored inital concerns regarding Eakle' mental stability, he requested a competency evaluation of Eakle. The court granted this request, and Eakle underwent a competency evaluation in August and September of 1997. (Doc. 17-6, pp. 36-41.) That evaluation concluded that Eakle was competent to stand trial, and recommended that he be remanded him to the court for further criminal proceedings. (*Id.*)

## B. Eakle's Guilty Plea and Sentence

Having been found competent to stand trial, on December 3, 1997, Eakle was charged in the Court of Common Pleas of Lackawanna County with 30 counts of rape, 30 counts of involuntary deviate sexual intercourse, 30 counts of sexual assault, 30 counts of aggravated sexual assault, 30 counts of corruption of minors, and 60 counts of indecent assault. These 210 charges arose from Eakle's alleged sexual abuse of his minor stepson over a ten year period spanning from January of 1987 to July of 1997. (Doc. 17-6, p. 24.)

On April 13, 1998, as his trial date approached, Eakle pleaded guilty to five of these 210 charges pursuant to the terms of a plea agreement. (Doc. 17-4, pp. 1-16.) Eakle's decision to plead guilty followed the release of discovery materials to the defense, which included police reports detailing admissions made by Eakle as well as a tape of a consensually recorded conversation with Eakle. ( Doc. 17-5, pp. 57-8.) At the time of this April 13, 1998 guilty plea proceeding, the trial judge engaged in a careful plea colloquy with Eakle outlining for him the penalties he faced upon entering his guilty plea, including a sentence to a term of imprisonment of up to 100 years. (*Id.*, p. 4.) The court and counsel also engaged in a searching exchange with Eakle to ensure that he understood these proceedings, and was competent to enter guilty pleas to these charges. (*Id.*, pp. 7-12.) In response to the court's questions, Eakle assured the trial judge that he was feeling well, understood the proceedings, confirmed that he had been found competent to stand trial, addressed his medication history in a cogent and fully-oriented

fashion, and reassured the court that nothing was affecting his ability to understand these proceedings. (*Id.*) Eakle then pleaded guilty to these five counts of sexual abuse of his step-son. (*Id.*) On August 6, 1998, he was sentenced to twenty-five (25) years imprisonment on these guilty pleas, a sentence that fell within the range of possible penalties outlined by the court for Eakle at the time of his guilty plea. (Doc. 17-6, pp. 25-26.)

### C.    Post-Conviction Proceedings in State Court

In the wake of this guilty plea conviction and sentence, Eakle filed a series of three different post-conviction relief act petitions. (*Id.*) The third of these petitions, which forms the basis of the instant Petition, was filed by Eakle in October of 2002. (*Id.*, p. 26.) In this petition Eakle challenged both his mental competence at the time of his April 13, 1998 guilty plea, and alleged that his trial counsel was ineffective in failing to recognize that he was not mentally competent to plead guilty. (*Id.*)

Counsel was appointed to represent Eakle in connection with the state post-conviction proceeding, and a hearing was held on his claims on February 9, 2005. (Doc. 17-5, pp. 1-68.) In the course of this evidentiary hearing, Eakle and his former trial counsel both testified. In his testimony, Eakle provided what he acknowledged was a contradictory set of sworn statements, repeatedly claiming that he had lied under oath at his guilty plea proceedings regarding the state of his mental competence. (*Id.*, pp. 4-44.)

Eakle's trial counsel then testified, stating that Eakle's decision to plead guilty followed the release of discovery materials to the defense, which included statements made by Eakle to the police as well as a tape recording of Eakle. Defense counsel further testified that he had obtained a competency evaluation for Eakle prior to the entry of the guilty plea, and only proceeded with that plea after he was satisfied from this examination that Eakle was, in fact, mentally competent. (*Id.*, pp. 44-68.) Counsel's assessment of Eakle's mental state was confirmed, in turn, by the results of the competency evaluation, which found Eakle competent to stand trial. (Doc. 17-6, pp. 36-41.)

Following this hearing, on April 5, 2006, the trial court entered a written opinion and order denying Eakle's state post-conviction relief act petition. (Doc. 17-6, pp.25-36.) In its April 5, 2006 opinion, the state court specifically found as a factual matter that the detailed, coherent, and cogent responses given by Eakle during his guilty plea, coupled with the competency assessment made as part of the court-ordered competence evaluation of the petitioner, confirmed that he was mentally competent at the time of his guilty plea. The trial judge similarly disposed of Eakle's complaints regarding the ineffectiveness of trial counsel, noting that counsel negotiated a favorable guilty plea for Eakle, undertook steps to ensure Eakle's mental competence at the outset of these proceedings, and effectively represented Eakle's interests throughout these proceedings. (*Id.*) The trial court also specifically considered, and rejected, a claim by Eakle that his counsel had

5

promised him a two-to-four year sentence at a state mental hospital. (*Id*.) In rejecting this assertion, the trial judge simply found that Eakle's claims were not credible in light of counsel's specific and emphatic denial that he had made any such promises. (*Id.*)

**D.    Eakle's Appeal of the State Court Ruling Denying Him Post-Conviction Relief**

Eakle appealed this decision to the Pennsylvania Superior Court, which affirmed the denial of this post-conviction relief act petition in an opinion filed on November 14, 2006. (Doc. 17-8, pp. 1-12.) In its November 14 opinion, the Superior Court specifically rejected Eakle's claim that he lacked the competence to plead guilty, noting that this claim was rebutted by the court-ordered psychiatric evaluation of him, and by his own conduct at the time of his April 13, 1998 guilty plea. (*Id.*) The Superior Court also rejected Eakle's assertions that his counsel was ineffective, finding that he had failed to demonstrate ineffectiveness by his trial counsel. (*Id.*)

**E.    Eakle's Federal Habeas Petition**

On May 1, 2007, Eakle filed the instant Petition. (Doc. 1.) Eakle raises two (2) claims, both of which have been thoroughly considered, and addressed, by the state courts. Specifically, he claims first, that he was not competent at the time of his guilty plea, and, second, that his state trial counsel was ineffective for permitting his guilty plea. (*Id.*)

Having carefully considered the arguments of the parties, for the reasons set forth

6

below, we conclude that Eakle's Petition should be denied.

## II.    DISCUSSION

### A.    State Prisoner Habeas Relief–The Legal Standard

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### 1.    Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief.  At the outset, a petition

must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. *See Priester v. Vaughan*, 382 F.3d 394, 401-02 (3d Cir. 2004).

### 2. Deference Owed to State Court Rulings

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; *see* 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," *see* 28 U.S.C. §2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006); *see also Warren v. Kyler*, 422 F.3d 132, 139-40 (3d Cir. 2005); *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. *See* 28 U.S.C. §2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. *See, e.g., Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam); *Demosthenes v. Baal*, 495 U.S. 731, 734-35 (1990).

This principle mandating deference to state court factual determinations specifically applies to state court findings relating to the competence of criminal

defendants. Thus, federal courts are not free to substitute their views for the findings of state judges on issues of competence to stand trial, *Maggio*, 462 U.S. at 117, competence to waive rights, *Demosthenes*, 495 U.S. at 734-35, or whether the defendant's mental competence affected his ability to comply with post-conviction petition filing deadlines. *Nara v. Frank*, 488 F.3d. 187, 200-01 (3d Cir. 2007) (state court finding that defendant's mental incompetence interfered with his ability to file timely petition entitled to a presumption of correctness). Rather, these factual findings must be presumed to be correct unless the petitioner can show by clear and convincing evidence that they were erroneous. *See* 28 U.S.C. § 2254(e)(1).

### 3.     Ineffective Assistance of Counsel- The Legal Standard

These principles apply with particular force to claims of ineffective assistance of counsel. A Petitioner like Eakle faces an exacting burden when he collaterally challenges a conviction and sentence based upon the alleged ineffectiveness of counsel. As the Supreme Court has noted:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or... sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the

adversary process that renders the results unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Thus, in order to succeed in a claim of ineffective assistance of counsel, the petitioner must show both "cause"; that is, a legally deficient performance by counsel, and "prejudice" resulting from that ineffective performance. With respect to the first element of this test, in assessing the competence of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential, " *Strickland*, 466 U.S. at 689, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A petitioner must satisfy both of the *Strickland* prongs in order to maintain a claim of ineffective counsel. *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001).

Therefore, at the outset, *Strickland* requires a petitioner to "establish first that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. *Id.* Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." *Id.* (quoting *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996)).

11

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second *Strickland* prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." *Id.* This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

Thus, as set forth in *Strickland*, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than

one with overwhelming record support.'" *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (quoting *Strickland*, 466 U.S. at 696). Therefore, the prejudice analysis compelled by *Strickland* specifically calls upon us to critically assess the strength of the government's case. *See id.*

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law are substantively consistent with the standard set forth in *Strickland*. *See Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (Pa. 1987); *see also Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted *Strickland* and thus was not 'contrary to' established Supreme Court precedent."). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of *Strickland*. *Billinger v. Cameron*, 2010 WL 2632286, at *4 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." *Hackett v. Price*, 381 F.3d 281, 287 (3d Cir. 2004); *see also Waddington v. Sarausad*, 555 U.S. 179, - - -, 129 S. Ct. 823, 831 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown

to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted). This additional hurdle is added to the petitioner's substantive burden under *Strickland*. *See Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1420 (2009) (referring to "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard"); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas.").

Furthermore, in a case such as this, where a state court judgment rests upon factual findings, it is also well-settled that:

> A state court decision based on a factual determination, . . . , will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. *Miller-El v. Cockrell,* 537 U.S. 322 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn,* 209 F.3d 280, 285 (3d Cir.2000). A state court's finding of the absence of discriminatory intent is "a pure issue of fact accorded significant deference," which will not be overturned unless clearly erroneous. *Miller-El*, 123 S.Ct. at 1040-41 (citation omitted).

*Rico v. Leftridge-Byrd*, 340 F.3d 178, 181 (3d Cir. 2003).

**B.      Eakle's Petition Should be Denied Because His Claims Are Without Merit**

   **1.      The State Court Findings Regarding Eakle's Mental Competence Are Fully Supported By The Evidence And Are Fatal Both to the Merits of His Claim Regarding His Competence to Plead Guilty and to His attack on the Effectiveness of His Counsel**

### a. This Court Should Accept The State Court Competency Finding

Eakle's Petition entails a consideration of the intersection of law and science, since many of his claims, on their merits, involve an assessment of his mental health. Eakle's primary claim is that he was not mentally competent at the time of his guilty plea in state court. This assertion that Eakle was not competent also forms the lynchpin of his claims in the instant Petition.

Eakle faces two challenges in sustaining these claims. First, he confronts the stubborn fact that the state trial and appellate courts have consistently found that he has not shown that he was incompetent at the time of this guilty plea. Second, he faces the stark legal reality that we are not free to substitute our views for the findings of state judges on issues of competence to stand trial, *Maggio*, 462 U.S. at 117, competence to waive rights, *Demosthenes*, 495 U.S. at 734-35, or whether the defendant's mental competence affected his ability to comply with post-conviction petition filing deadlines, *Nara*, 488 F.3d. at 200-01. Rather, these factual findings are presumed to be correct unless the petitioner can show by clear and convincing evidence that these factual findings were erroneous. *See* 28 U.S.C. § 2254(e)(1).

In this case, we find that Eakle has not overcome these two legal and factual hurdles to asserting his lack of competence as an independent substantive ground for

habeas relief. Quite the contrary, the evidence affirmatively shows that Eakle was competent at the time of this plea proceedings. A forensic examination of Eakle conducted in September of 1998 concluded that he was competent. In addition, the guilty plea colloquy confirmed Eakle's mental competence. In the course of this colloquy, Eakle spoke directly to the issue of his mental health, and reassured the court that he was competent, and fully understood the nature of these proceedings. He then amply illustrated his understanding by engaging in a thorough exchange with the court, an exchange which revealed that Eakle had a complete understanding of these guilty plea proceedings, and the consequences of this guilty plea. Those proceedings, and mental examinations, also demonstrated that Eakle had a full appreciation for the nature of the proceedings. (*See* Doc. 17-4.)

These state court findings that Eakle was competent at the time of his guilty plea, which we conclude are fully supported by the evidence, defeat Eakle's claim in the instant Petition that he is entitled to relief due to his lack of mental competence at the time he pleaded guilty. With respect to this issue, the standards that govern our consideration of the merits of Eakle's claim are clear:

> In a federal habeas corpus proceeding attacking a state court conviction, the petitioner must prove that he "was incompetent in fact at the time of the plea." The test of incompetency is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him."

*Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994) (citations omitted)

In this case, the Pennsylvania courts have found that Eakle has not shown that he was mentally incompetent at the time of his guilty plea, and that factual finding is fully supported by the evidence. That evidence includes the evaluation and assessment of mental health professionals, as well as Eakle's own actions, which amply demonstrated that he had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and possessed a rational, as well as a factual, understanding of the proceedings against him. Given these state court findings, which are fully supported by the evidence, Eakle's collateral attack on his conviction in federal court on grounds of mental incompetence must fail. Indeed, in such instances where the state courts have thoroughly and fairly examined the issue of a defendant's mental competence, federal courts have routinely rejected invitations to second guess these competence determinations in federal habeas corpus proceedings. *See, e.g., Wilson v. Ozmint*, 352 F.3d 847 (4th Cir. 2003); *Theriot*, 18 F.3d 311; *Rodriguez v. Quarterman*, No. 05-659, 2006 WL 1900630 (W.D. Tex. July 11, 2006); *Ford v. Quarterman*, No. 05-2314, 2006 WL 1787793 (N.D.Tex. June 26, 2006).

These principles apply here and compel us to the conclusion reached by every other court which has examined this matter–Charlie Eakle was mentally competent at the time that he pleaded guilty to sexually abusing his step-son in April of 1998.

17

### b. The State Court's Findings Regarding the Effectiveness of Eakle' Counsel Also Are Fully Supported By the Evidence

The state court's factual findings also are fatal to Eakle's claim that his counsel was ineffective for failing to further pursue competency issues. In this setting– where a competency examination was sought by defense counsel, Eakle was found mentally competent and presented as mentally competent at his guilty plea– counsel cannot be found to have been ineffective in failing to take further steps on this issue. Indeed, in this setting, courts have repeatedly held that defense counsel is not ineffective in further questioning a defendant's competency, when all of the objective evidence shows that the defendant is mentally competent. *See Taylor v. Horn*, 504 F.3d 416 (3d Cir. 2007); *Dooley v. Petsock*, 816 F.2d 885 (3d Cir. 1987).

Eakle also cannot sustain a claim of ineffective assistance of counsel by arguing that his attorney promised him a specific sentence which he did not receive. This claim fails for two reasons. First, the Pennsylvania courts have found, as a matter of fact, that no such promises were made. This factual finding, which rests on an assessment of the credibility of Eakle and his trial counsel, is a reasonable one, with a firm factual basis in the record of the state proceedings, and therefore may not now be disturbed by this court in a federal habeas proceeding. Moreover, since we must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence, 28 U.S.C. § 2254(e)(1),

*Campbell v. Vaughn,* 209 F.3d 280, 285 (3d Cir. 2000), this reasonable and well-grounded factual finding defeats Eakle's ineffective assistance of counsel claim.

Second, this claim fails because it is clear that Eakle pleaded guilty with the understanding that he faced up to 100 years in prison on his plea. In this setting, where Eakle clearly understood the penalties he faced by pleading guilty, he cannot now belatedly attack that plea by asserting that he had some secret, unstated promise of a lesser sentence from his counsel. Indeed, "we have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." *See, e.g., United States v. Jones,* 336 F.3d 245, 254 (3d Cir. 2003) (counsel not ineffective for allegedly promising defendant a sentence of "no more than 71 months" where defendant was advised in open-court colloquy of potential maximum sentence and there were no other promises regarding sentence); *United States v. Mustafa,* 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there was no guarantee as to sentence, and that the court could sentence him to the maximum."); *Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir. 1972) (per curiam) (holding that "[a]n erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary" where record demonstrates that a proper plea colloquy took place

19

during which defendant acknowledged that he was aware of his maximum potential sentence); *United States. v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

Finally, in assessing the performance of counsel, we are mindful of the fact that "in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's . . . performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'"" *Rolan*, 445 F.3d at 682 (quoting *Strickland*, 466 U.S. at 696). This factor also weighs heavily against Eakle since it appears that the case against him was compelling, consisting of proof of repeated acts over the span of a decade, coupled with admissions by Eakle that he had mistreated this minor child. In this setting, Eakle cannot show that the alleged errors of counsel were in any way prejudicial. Indeed, since Eakle would have faced a mandatory life sentence if he was convicted in this case at trial, counsel's advice was prudent and sound.

## III.    CONCLUSION

For the foregoing reasons, the instant Petition for Writ of Habeas Corpus will be denied. We also will deny a certificate of appealability based on the reasoning in this Memorandum. However, Petitioner is advised that he has the right for thirty (30) days to appeal our Order denying his Petition, *see* Federal Rule of Appellate Procedure 4, and that our denial of a certificate of appealability does not prevent him from doing so, as

long as he also seeks, and obtains, a certificate of appealability from the court of appeals, *see* 28 U.S.C. § 2253. An Order consistent with this Memorandum will issue on today's date.